**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC, and MICROSOFT CORPORATION <br><br> Defendants. | Case No. 24-cv-04872-SHS-OTW |

## RULE 26(f) REPORT AND PROPOSED CASE MANAGEMENT PLAN

The parties submit this report of their Rule 26(f) conference and proposed case management plan.

## I.  INTRODUCTION

1.      The parties met and conferred over video as required by Rule 26(f) on October 1, 2024.

2.      The parties' Rule 26(f) report is due on October 16, 2024. *See* Dkt. 85.

## II.  SUMMARY OF CLAIMS AND DEFENSES

3.      Plaintiff, The Center for Investigative Reporting, Inc. ("CIR" or "Plaintiff"), brings claims for direct and contributory copyright infringement under the Copyright Act (17 U.S.C. § 501); and violation of the Digital Millennium Copyright Act ("DMCA") by (i) removal of copyright management information ("CMI") and (ii) distribution of Plaintiff's works-in-suit with

CMI removed, knowing that CMI has been removed without Plaintiff's permission (17 U.S.C. § 1202). Plaintiff seeks statutory damages for each alleged violation. Plaintiff also seeks injunctive relief.

4.      Defendants Microsoft Corporation ("Microsoft") and OpenAI, Inc., OpenAI GP LLC, OpenAI LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation, LLC, and OpenAI Holdings, LLC (collectively, "OpenAI"[1] and with Microsoft, "Defendants") plan to assert several arguments and/or defenses, including but not limited to failure to state a claim, no infringement, fair use, substantial non-infringing uses, *scenes à faire*, 17 U.S.C. § 102(b), 17 U.S.C. § 512 (a)-(d), de minimis copying, preemption, and lack of injury.

A.      **PLAINTIFF'S STATEMENT**

5.      Founded in 1975, Plaintiff is the oldest nonprofit newsroom in the country. For decades, Plaintiff has published valuable, one-of-a-kind, award-winning reporting that highlights diverse communities. In just the last few months, for example, Plaintiff was awarded the George Polk Award, a Peabody Award, a Webby Award, and Robert F. Kennedy Human Rights Award for its unique reporting on diverse subjects.

6.      Plaintiff runs the news brands Mother Jones, Reveal, and CIR Studios. Plaintiff owns the exclusive copyrights to all issues of the Mother Jones magazine published since 1978, including articles contained in each issue, and (with a few exceptions) has registered them with the Copyright Office ("Registered Works"). Issues published since 1995 are available online at the

---

[1] OpenAI OpCo LLC is OpenAI's main operating entity and the entity related to the activities alleged in the complaint. OpenAI does not believe that OpenAI GP, LLC, OpenAI, LLC, OpenAI Global LLC, OAI Corporation, LLC, and OpenAI Holdings, LLC are appropriate defendants in this case. Accordingly, OpenAI is conferring with Plaintiff about securing the dismissal of those entities. *Cf. Millette v. OpenAI, Inc. et al.* 5:24-cv-04710-EJD, Dkt. 39 (N.D. Cal. Sept. 11, 2024) (voluntary dismissal of entities other than OpenAI, Inc. and OpenAI OpCo LLC).

web domain motherjones.com; earlier versions are available online at Google Books. Plaintiff also owns unregistered copyrights to additional articles under the Mother Jones and Reveal brands that are published, respectively, on the web domains motherjones.com and revealnews.org.

7.     Defendants are the companies responsible for the creation and development of the GPT, ChatGPT, and Copilot generative artificial intelligence ("GenAI") products, and the large language models ("LLMs") that power them.  Defendants created these products by training them on works of human authorship, many of which are protected by copyright, including works owned by Plaintiff. While Plaintiff has identified particular products, Plaintiff's claims are not limited to those products, but rather, to any of Defendants' products trained on Plaintiff's copyright-protected content or using that content in providing responses to clients.

8.      Plaintiff alleges that Defendants willfully infringed Plaintiff's exclusive rights in the Registered Works by, *inter alia*, downloading those works from the internet; encoding those works in computer memory; regurgitating those works verbatim (or nearly verbatim) in response to prompts by their users; producing significant amounts of material from those works in response to prompts by their users; and abridging those works in response to prompts by users. Plaintiff alleges that Defendants' unlicensed copying, reproduction, display, and preparation of derivatives of the Registered Works constitute direct copyright infringement in violation of Plaintiff's intellectual property rights.  Plaintiff also alleges that Defendants committed contributory infringement by materially contributing to and assisting with their users' direct infringement.

9.     Plaintiff also alleges that Defendants violated the DMCA by creating copies of Plaintiff's copyrighted works of journalism with CMI removed and including them in training sets used to train their products, knowing or having reasonable grounds to know that inclusion in their training sets of Plaintiff's works of journalism with CMI removed would induce, enable, facilitate,

or conceal copyright infringement by Defendants and their users. Further, Plaintiff alleges that OpenAI and Microsoft violated the DMCA by sharing with one another copies of Plaintiff's works with CMI removed in connection with the development of their products knowing or having reason to know that such distribution would induce, enable, facilitate, or conceal infringement.

10.  Plaintiff submits that the principal facts and legal issues in this dispute include:

a.  Whether and to what extent Defendants (working together and/or separately) unlawfully copied, reproduced, and/or otherwise used Plaintiff's works-in-suit to train or otherwise build and operate their products;

b.  Whether and to what extent Defendants unlawfully copied, reproduced, regurgitated, abridged, and/or otherwise used Plaintiff's works-in-suit in the output of their products;

c.  Whether Defendants' unauthorized use of Plaintiff's works-in-suit was willful;

d.  The degree to which Defendants have profited from their unauthorized use of Plaintiff's works-in-suit;

e.  To what extent Defendants' unauthorized use of Plaintiff's works-in-suit has usurped commercial opportunities for Plaintiff;

f.  To what extent Defendants contributed to and directly assisted with the direct infringement of Plaintiff's works by Defendants' users;

g.  To what extent Defendants knew or had reason to know of their users' direct infringement;

h.  To what extent Defendants intentionally removed CMI from Plaintiff's works-in-suit;

i.   Whether such removal was done with knowledge, or reason to know, that such removal would induce, enable, facilitate, or conceal infringement;

j.   To what extent Defendants distributed Plaintiff's works-in-suit with CMI removed, knowing that CMI had been removed without Plaintiff's permission;

k.   Whether such removal was done with knowledge, or reason to know, that such removal would induce, enable, facilitate, or conceal infringement;

l.   To what extent Defendants collaborated, coordinated, or otherwise worked with one another to build and operate their products; and

m.   Whether Defendants can establish the elements of fair use, which will address issues such as the extent of transformation of Plaintiff's works (if any), Defendants' purpose in copying the works (including any commercial purposes), the amount of Plaintiff's works that Defendant copied, the harm Defendants' infringement causes to the licensing market for Plaintiff's works and copyright-protected works generally, and the harms to the public caused by Defendants' products and resulting lack of public benefit to support a finding of fair use.

## B.   DEFENDANTS' STATEMENT

11.   ***OpenAI Defendants.***   OpenAI is an artificial intelligence (AI) research and deployment company, with a mission to ensure that artificial general intelligence benefits all of humanity. OpenAI researches, develops, and releases cutting edge AI technology, including ChatGPT and its underlying large language models, as well as tools and best practices for the safety, alignment, and governance of AI.

12.     Developing a large language model like the one underlying ChatGPT and Copilot requires teaching the model intelligence and language, such as the ability to predict, reason and solve problems, as well as aligning it to human values and preferences. Teaching a model to understand language and the facts that constitute humans' collective knowledge, for instance, involves showing the model a wide diversity of text, and having it try to predict the word that comes next in each of a huge range of sequences. This requires an enormous amount of computation, as models review, analyze, and learn from trillions of words. Through this extensive process, the model not only learns how words fit together grammatically, but also how words work together to form higher-level ideas, and ultimately how sequences of words form structured thoughts or pose coherent problems. For example, when we think of the word "cloud", we might also think of related words like "sky" and "rain"; when given a sentence like "The secret to happiness is", we might think of various philosophical ideas. In gaining fluency with predicting the next word, the model thereby learns concepts and the building blocks of intelligence.

13.     Plaintiff's lawsuit alleges that its works were shown to OpenAI's large language models as part of their training; that those models learned from those works; and that this process infringed Plaintiff's copyrights and violated the DMCA. Further, Plaintiff alleges that OpenAI's LLM products "regurgitat[e] [Plaintiff's] works verbatim or nearly verbatim" and "produc[e] significant amounts of material from those works in response to prompts by ChatGPT users," thereby "reducing Plaintiff's subscription, licensing, advertising, and affiliate revenue." Dkt. 88 ¶¶ 96, 130–31.

14.     ***Microsoft Corporation.*** Microsoft is a Washington Corporation with its principal place of business in Redmond, Washington. Founded in 1975, Microsoft is a technology company whose mission is to empower every person and every organization on the planet to achieve more.

Microsoft is creating the platforms and tools, powered by artificial intelligence, that deliver better, faster, and more effective solutions to support small and large business competitiveness, improve educational and health outcomes, grow public-sector efficiency, and empower human ingenuity. Microsoft is committed to making the promise of AI real – and doing it responsibly.

15.     Defendants deny that they have violated any of Plaintiff's rights. The principal facts in dispute include:

    a.  Whether Plaintiff's copyrighted works at issue ("Plaintiff's Works") were actually used to train the large language models used for ChatGPT and Copilot.

    b.  Whether Microsoft has created or downloaded its own copies of Plaintiff's Works.

    c.  Whether Microsoft shared copies of Plaintiff's Works with OpenAI.

    d.  Whether Defendants make copies of abridgments of Plaintiff's Works and store them in computer memory.

    e.  Whether and how the alleged inclusion of Plaintiff's Works in the training data results in copying of those works.

    f.  Whether and to what extent the alleged use of each of Plaintiff's Works served a new and different purpose from the original purpose of each of those works.

    g.  Whether and to what extent there exists a licensing market to use Plaintiff's Works in the manner alleged.

    h.  Whether and to what extent any use of Plaintiff's Works by Defendants or their users affected any market for those works.

    i.  Whether and to what extent Defendants' products serve as a substitute for Plaintiff's Works.

j.  Whether and to what extent Plaintiff was harmed by the alleged use of Plaintiff's Works.

k.  Whether and to what extent the alleged use of Plaintiff's Works serves the public interest.

l.  Whether Defendants have contributed to copyright infringement, acted in a way that promoted infringing use, or did anything to induce infringing use.

m.  Whether Defendants had actual knowledge of the alleged use of their products to create specific outputs that allegedly infringe Plaintiff's Works.

n.  Whether Defendants' products are capable of substantial non-infringing uses.

o.  Whether Plaintiff included CMI in Plaintiff's Works.

p.  Whether that alleged CMI was intentionally removed during the training process with "reasonable grounds to know" that such removal "will induce, enable, facilitate, or conceal an infringement" of copyright.

q.  Whether that alleged CMI was intentionally removed from model outputs with "reasonable grounds to know" that such removal "will induce, enable, facilitate, or conceal an infringement" of copyright.

r.  Whether Defendants distributed Plaintiff's Works or copies of Plaintiff's Works "knowing that copyright management information has been removed or altered," and with "reasonable grounds to know" that such distribution "will induce, enable, facilitate, or conceal an infringement" of copyright.

16. Defendants summarize the legal issues as follows:

a.  Whether Plaintiff owns valid, enforceable copyrights in Plaintiff's Works.

b.   Whether Plaintiff's copyright registrations are valid and provide a basis for bringing a suit under 17 U.S.C. § 411(a).

c.   Whether Plaintiff's claims are barred, in whole or in part, by the statute of limitations or equitable defenses such as waiver or estoppel.

d.   Whether Plaintiff can meet its prima facie burden of establishing that Defendants directly infringed Plaintiff's Works.

e.   Whether, assuming Plaintiff can prove Defendants engaged in prima facie acts of infringement, Defendants' alleged use of Plaintiff's Works to train a large language model is a fair use under 17 U.S.C § 107.

f.   Whether Plaintiff is entitled to relief under a contributory copyright infringement claim.

g.   Whether Plaintiff is entitled to relief for violation of Section 1202(b) of the DMCA.

h.   Whether, assuming Defendants are found liable on one or more theories, Plaintiff is legally entitled to the full measure of damages it seeks.

## III.   <u>INITIAL DISCLOSURES</u>

17.   The parties agree to serve initial disclosures by October 23, 2024.

## IV.   <u>MOTION PRACTICE</u>

18.   Defendants filed partial Motions to Dismiss Plaintiff's initial complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 3, 2024. Dkt. 69, 72. Plaintiff then filed a First Amended Complaint on September 24, 2024. Dkt. 88. On October 15, 2024, Defendants again moved to dismiss portions of Plaintiff's First Amended Complaint. Dkt. 96, 99. Briefing on Defendants' motions to dismiss will be completed by November 19, 2024. Dkt. 89.

19.    On October 4, 2024, Defendants filed a motion to consolidate this case with the pending related actions *The New York Times Co. v. Microsoft Corp. et al.*, 1:23-cv-11195-SHS and *Daily News, LP et al. v. Microsoft Corp. et al.*, 1:24-cv-03285-SHS (collectively the "Newspaper Cases"). ECF No. 92.  Defendants continue to assert that, as argued fulsomely in the motion to consolidate, consolidation of this Action with the Newspaper Cases is appropriate and will serve judicial economy and reduce the burden on the Parties given the common locus of facts and overlapping claims across the actions.  Indeed, Defendants allege that Plaintiff successfully sought to relate this Action to the *The New York Times Co. v. Microsoft Corp. et al.*, 1:23-cv-11195-SHS action.  Dkt. 5. Plaintiff will be filing its opposition to Defendants' motion to consolidate by October 18, 2024. Briefing on Defendants' motion to consolidate will be completed by October 25, 2024.

20.    The parties anticipate filing Motions for Summary Judgment on certain issues that may narrow the case, and further anticipate that all parties may file various discovery motions.

## V.    <u>SCOPE OF DISCOVERY</u>

21.    The parties agree that discovery is governed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York, and this Court's Individual Practices.

22.    Plaintiff anticipates that discovery will be necessary on at least the following subjects:

  a.  Identification of the universe of Plaintiff's works-in-suit;

  b.  Plaintiff's ownership of the works-in-suit;

  c.  Defendants' corporate structures;

d.  Training data and the sources of training data, including Plaintiff's works-in-suit, used in training any of their products;

e.  Identification of the CMI conveyed in connection with Plaintiff's works-in-suit;

f.  Whether the CMI of Plaintiff's works-in-suit was intentionally removed during the training process with knowledge or reasonable grounds to know that such removal will induce, enable, facilitate, or conceal an infringement of copyright;

g.  Whether Defendants distributed copies of Plaintiff's works-in-suit with CMI removed, knowing that CMI had been removed without Plaintiff's permission, with knowledge or reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement of copyright;

h.  Whether the CMI of Plaintiff's works-in-suit was intentionally removed from outputs with reasonable grounds to know that such removal will induce, enable, facilitate, or conceal an infringement of copyright;

i.  Defendants' purposes for removing CMI;

j.  The creation of Defendants' products, including their training, dataset construction, dataset cleaning, training methods, weighting for training data or similar, finetuning, and grounding, along with any source-code, parameters, algorithms, architecture, hardware, or software;

k.  The development and commercialization of Defendants' products;

l. User requests, traffic, and behavior when interacting with Defendants' products;

m. Output generated by Defendants' products, including output that repeats or summarizes training material or contains hallucinations or misinformation;

n. Defendants' licenses with other news organizations or content creators;

o. Defendants' policies for defending or indemnifying their users in copyright infringement actions, and users' claims under those policies;

p. Actual or potential harms caused by Defendants' products, including to content creators and to society;

q. Defendants' business plans, product plans, and financial plans;

r. Use of Plaintiff's content in retrieval augmented generation ("RAG") and search products;

s. The presence of copyrighted content in datasets used to train Defendants' products, within the products themselves, or in output generated by the products, including such content that belongs to Plaintiff;

t. The relationship between Microsoft and OpenAI, including Microsoft's investments in OpenAI, role in licensing deals involving the products, and control over OpenAI;

u. Defendants' knowledge of their infringing conduct, including Defendants' communications about their unlicensed use of copyrighted content in third-party training sets and/or Defendants' products, and efforts to disguise or otherwise cover up their copying of copyrighted content belonging to Plaintiff;

  v.  Defendants' purpose in copying the works (including any commercial purposes);

  w.  The amount of Plaintiff's works that Defendants copied;

  x.  Defendants' revenues and profits associated with their products;

  y.  The impact of Defendants' products on the market for Plaintiff's works, and the market for licensing copyright-protected works generally, including, but not limited to, the market for lawfully licensing works for training and for use in RAG outputs; and

  z.  Information pertinent to the credibility of Defendants' decisionmakers and witnesses.

23. **Defendants** anticipate that discovery will be necessary on at least the following subjects:

  a. Plaintiff's lack of harm.

  b. Plaintiff's ownership of and copyright interest in the works that are the subject of the First Amended Complaint.

  c. Plaintiff's Works, and where and how they are published.

  d. The licensing and distribution of all Plaintiff's Works that it asserts to form any basis for its claims, and all other facts concerning the market for such works.

  e. Any copyright registrations or applications for registration of any of Plaintiff's Works that it asserts to form any basis for its claims.

  f. All uses by Plaintiff of ChatGPT, Copilot (formerly Bing Chat), or any other AI service offered by any Defendant.

g. Plaintiff's reporting on OpenAI, ChatGPT, Copilot, or any other AI service offered by any Defendant.

h. All efforts by Plaintiff or anyone acting on its behalf to cause ChatGPT or any other AI service offered by any Defendant to reproduce Plaintiff's Works, including, but not limited to, creating the outputs displayed in the First Amended Complaint and in Exhibits 10 and 11 thereto.

i. All efforts by Plaintiff or anyone acting on its behalf regarding the creation of Exhibits 5-9 to the First Amended Complaint.

j. The availability of third-party content that is similar to or describes Plaintiff's Works.

k. Third-party content discussing or reporting on the same subject matter as Plaintiff's Works.

## VI.  DISCOVERY ORDERS

24.    Subject to the Court's approval, the parties have agreed to adopt the protective order and proposed agreed order regarding the production of Electronically Stored Information ("ESI") filed in *The New York Times Co. v. Microsoft Corp. et al.*, 1:23-cv-11195-SHS-OTW (S.D.N.Y) ("*New York Times*") with minor modifications. The parties filed the proposed protective order and ESI order on October 15, 2024. (Dkt. 103-104.)

## VII.  DISCOVERY LIMITS

25.    ***Plaintiff's Position.*** For each Defendant, Plaintiff shall be permitted to depose all individuals identified in that Defendant's initial disclosures, plus five (5) additional individuals from that Defendant, as well as have an additional thirty-five (35) hours of Rule 30(b)(6)

deposition time for that Defendant. Plaintiff does not otherwise propose any amendments to the default discovery limits under the Federal Rules of Civil Procedure.

26.    ***OpenAI's Position.*** OpenAI notes that the parties are discussing proposals for coordinating and/or consolidating depositions across several cases. Pending the outcome of these discussions, a modification of the defaults established by the Federal Rules may be appropriate.

27.    If circumstances change, the parties agree to work together in good faith to accommodate reasonable requests to modify these defaults to minimize the need for this Court's intervention.

28.    ***Microsoft's Position.*** Microsoft and OpenAI are discussing proposals for coordinating and/or consolidating depositions across the Consolidated Newspaper cases (*New York Times* and *Daily News*) as well as the Consolidated New York Class Actions (*Authors Guild* and *Alter*) and the Consolidated California Class Action.[2]  For the reasons stated in the Defendants' Motion to Consolidate (Dkt. 92), this Action should be consolidated with the other Newspaper cases and depositions should be coordinated across all of the related actions involving Microsoft and/or OpenAI to avoid multiple depositions of the same witnesses on the same topics.

## VIII.    DISCOVERY DISPUTES

29.    The parties agree that discovery disputes are governed by Section II.b. of Magistrate Judge Ona T. Wang's Individual Practices in Civil Cases, as well as any applicable provisions of such orders regarding confidentiality, privilege, and ESI as the Court may enter.

---

[2] Microsoft is not a party to the Consolidated California Class Action (*In Re OpenAI ChatGPT Litigation*, Master File Case No. 3:23-cv-03223-AMO (N.D. Cal.)), but given the overlapping issues and facts as to OpenAI in that case and the Consolidated Newspaper cases and Consolidated New York Class Actions, the parties in all cases are working together to coordinate depositions.

## IX.  **CASE SCHEDULE**

30.    The parties disagree about the appropriate scheduling and sequencing of the case.

The parties' competing scheduling proposals are as follows:

| Case Event | Plaintiff's Proposed Date | Defendants' Proposed Date |
|---|---|---|
| Discovery Opens (First Date to Serve Requests for Production of Documents, Interrogatories, and Requests for Admission) | October 1, 2024 (date of Rule 26(f) Conference) | October 1, 2024 (date of Rule 26(f) Conference) |
| Rule 26(a)(1) Initial Disclosures | October 23, 2024 | October 23, 2024 |
| Last Day to Amend Pleadings and Join Additional Parties Without Leave of Court | January 8, 2025 | [TBD] |
| Substantial Production of Documents | March 14, 2025 | [TBD] |
| Close of Fact Discovery | May 16, 2025 | December 20, 2024 (Interim) |
| Opening Expert Reports | June 18, 2025 | [TBD] |
| Rebuttal Expert Reports | July 18, 2025 | [TBD] |
| Close of Expert Discovery | August 15, 2025 | [TBD] |
| MSJs and *Daubert* Motions | October 14, 2025 | [TBD] |
| Oppositions to MSJs and *Daubert* Motions | November 11, 2025 | [TBD] |
| Replies ISO MSJs and *Daubert* Motions | November 25, 2025 | [TBD] |
| Hearing on MSJs | [To be inserted by the Court] | [To be inserted by the Court] |
| Deadline to Submit Joint Pretrial Order Pursuant to Rule 3(A) of the Court's Individual Practices | [To be inserted by the Court] | [To be inserted by the Court] |
| Deadline to Submit Documents Required by Rule 3(B) of the Court's Individual Practices | [To be inserted by the Court] | [To be inserted by the Court] |
| Final Pretrial Conference | [To be inserted by the Court] | [To be inserted by the Court] |
| Trial | [To be inserted by the Court] | [To be inserted by the Court] |

### A.    PLAINTIFF'S PROPOSED SCHEDULE

31.    As set forth in their motion to consolidate (Dkt. 92), Defendants seek to consolidate this case with the already-consolidated *New York Times* and *Daily News* cases. However, with fact discovery scheduled to close in *New York Times* and *Daily News* on December 20, 2024,[3] Plaintiff does not believe that this case should be consolidated with those cases, but instead should continue to be managed as related. In Plaintiff's view, the parties should endeavor to find efficiencies based on discovery in the earlier news cases, including the possibility of reducing the scope of depositions by incorporating testimony from the earlier cases and attempting to rely to the extent possible on documents produced and ESI search terms and custodians agreed to already in the earlier cases. Plaintiff will be filing its opposition to Defendants' motion to consolidate by October 18, 2024, setting forth in greater detail Plaintiff's position on this issue.

### B.    DEFENDANTS' PROPOSED SCHEDULE

32.    Defendants have moved to consolidate this case for discovery and pretrial purposes with the already-consolidated *The New York Times Co. v. Microsoft Corp. et al.* (1:23-cv-11195-SHS-OTW) and *Daily News, LP et al. v. Microsoft Corp. et al.* (1:24-cv-03285-SHS-OTW). Dkt. 92.  In those cases, the Court has set December 20, 2024 as an interim deadline for the close of fact discovery, but has not yet adopted any subsequent deadlines. *See New York Times*, Dkt. 243 at 3. Defendants' consolidation motion seeks to place this case on the same schedule as the already-consolidated cases, thereby also adopting December 20, 2024 as an interim fact discovery cut-off in this case without yet setting subsequent deadlines. Dkt. 92.

---

[3] While Defendants state below that December 20 is only an "interim discovery deadline" that is subject to change, they offer no authority for reaching consolidation decisions based on hypothetical changes in circumstances that have not materialized.

33.     For the reasons explained in Defendants' motion, placing this case on the same track as the already-consolidated cases will ensure consistent adjudication of the extensive factual and legal overlap among the cases, alleviate the burden on parties, witnesses, and the Court, and conserve resources and expedite resolution of all three cases. While Plaintiff asserts that the current schedule in the already-consolidated cases would not afford it adequate time to participate in discovery, Defendants note that the Court has established December 20, 2024 only as an *interim* discovery deadline. Indeed, the Court has recognized that the deadline is a "placeholder" and that significant discovery in the *New York Times* and *Daily News* cases remains.

34.     Moreover, in an effort to address Plaintiff's concerns, Defendants have already agreed to produce to Plaintiff the same materials previously produced in the *New York Times* and *Daily News* cases, to identify custodians whose documents were searched, and to disclose the search terms used to gather documents in those cases.  And, as noted above, the parties are discussing proposals for coordinating and/or consolidating depositions across several cases in order to ensure an efficient process for all parties.

## X.    **TRIAL**

35.     The parties have demanded a trial by jury.

36.     The parties anticipate the trial will last approximately two weeks, subject to later conferral and based on the Court's prior rulings.

## XI.    **ADR AND SETTLEMENT**

37.     The parties are mindful of the benefits of the negotiated resolution of claims, and will continue to look for opportunities to discuss settlement and ADR as appropriate. The parties would be amenable to an early settlement conference before a magistrate judge to explore the possibility of an amicable resolution.

- 18 -

Dated: October 16, 2024

RESPECTFULLY SUBMITTED,

*/s/ Matthew Topic*

Jonathan Loevy (*pro hac vice*)
Michael Kanovitz (*pro hac vice*)
Lauren Carbajal (*pro hac vice*)
Stephen Stich Match (No. 5567854)
Matthew Topic (*pro hac vice*)
Thomas Kayes (*pro hac vice*)
Steven Art (*pro hac vice*)
Kyle Wallenberg*

LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900 (p)
312-243-5902 (f)
jon@loevy.com
mike@loevy.com
carbajal@loevy.com
match@loevy.com
matt@loevy.com
kayes@loevy.com
steve@loevy.com
wallenberg@loevy.com

**pro hac vice* forthcoming

*Attorneys for Plaintiff*

Dated: October 16, 2024                    MORRISON & FOERSTER LLP


By: */s/ Carolyn Homer*
        Joseph C. Gratz (*pro hac vice*)
        JGratz@mofo.com
        Vera Ranieri (*pro hac vice*)
        VRanieri@mofo.com
        425 Market Street
        San Francisco, CA  94105-2482
        Telephone:  (415) 268-7000
        Facsimile:  (415) 268-7522

        Emily C. Wood
        EWood@mofo.com
        Eric K. Nikolaides
        ENikolaides@mofo.com
        250 W. 55th Street
        New York, NY 10019-9601
        Telephone:  (212) 468-8000
        Facsimile:  (212) 468-7900

        Attorneys for Defendants
        OPENAI, INC., OPENAI LP, OPENAI
        GP, LLC, OPENAI, LLC, OPENAI
        OPCO LLC, OPENAI GLOBAL LLC,
        OAI CORPORATION, LLC, and
        OPENAI HOLDINGS, LLC

Dated: October 16, 2024

LATHAM & WATKINS LLP

By: */s/ Elana Nightingale Dawson*

Andrew Gass (*pro hac vice*)
andrew.gass@lw.com
Joseph R. Wetzel (*pro hac vice*)
joe.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095

Sarang Damle
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
555 Eleventh Street NW
Suite 100
Washington, DC 20004
Telephone:  (202) 637-2200
Facsimile:  (202) 637-2201

Allison Levine Stillman
alli.stillman@lw.com
Rachel Renee Blitzer
rachel.blitzer@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864

Attorneys for Defendants
OPENAI, INC., OPENAI LP, OPENAI
GP, LLC, OPENAI, LLC, OPENAI
OPCO LLC, OPENAI GLOBAL LLC,
OAI CORPORATION, LLC, and
OPENAI HOLDINGS, LLC

Dated: October 16, 2024

KEKER, VAN NEST & PETERS LLP

By: */s/ Paven Malhotra*

Robert A. Van Nest (*pro hac vice*)
RVanNest@keker.com
R. James Slaughter (*pro hac vice*)
RSlaughter@keker.com
Paven Malhotra
PMalhotra@keker.com
Michelle S. Ybarra (*pro hac vice*)
MYbarra@keker.com
Nicholas S. Goldberg (*pro hac vice*)
NGoldberg@keker.com
Thomas E. Gorman (*pro hac vice*)
TGorman@keker.com
Katie Lynn Joyce (*pro hac vice*)
KJoyce@keker.com
Christopher S. Sun (*pro hac vice*)
csun@keker.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendants
OPENAI, INC., OPENAI LP, OPENAI
GP, LLC, OPENAI, LLC, OPENAI
OPCO LLC, OPENAI GLOBAL LLC,
OAI CORPORATION, LLC, and
OPENAI HOLDINGS, LLC

Dated: October 16, 2024                    ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ Annette L. Hurst
Annette L. Hurst (admitted *pro hac vice*)
The Orrick Building, 405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
Email: ahurst@orrick.com

Christopher Cariello
51 West 52nd Street
New York: NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
Email: ccariello@orrick.com
        mrshapiro@orrick.com

Sheryl Koval Garko (admitted *pro hac vice*)
Laura Brooks Najemy (admitted *pro hac vice*)
222 Berkeley Street, Suite 2000
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 8801-1801
Email: sgarko@orrick.com
        lnajemy@orrick.com

Attorneys for Defendant MICROSOFT
CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on October 16, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.

*/s/ Matthew Topic*
Matthew Topic
