UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING, INC.,<br><br>                 Plaintiff,<br>   v.<br><br>OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC, and MICROSOFT CORPORATION,<br><br>                 Defendants. | Case No. 1:24-cv-04872-SHS-OTW |

**DEFENDANT MICROSOFT CORPORATION'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

November 19, 2024

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I. CIR LACKS STANDING FOR ITS CMI CLAIMS BECAUSE IT FAILS TO ALLEGE AN ACTUAL OR THREATENED INJURY. ..................................................................... 2

II. CIR FAILS TO STATE A § 1202 CLAIM. ................................................................... 4

   A. The Amended Complaint Does Not Plausibly Allege That Microsoft Removed CMI From Copies Of Works Or Distributed Works Lacking CMI. ........................................... 4

   B. The Amended Complaint Does Not Plausibly Allege A Likelihood That Removal Of CMI During Training Of An AI Tool Will Induce, Enable, Facilitate, Or Conceal Infringement. ............................................................................................................... 5

III. CIR FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT BASED ON OUTPUTS GENERATED BASED ON USER PROMPTS. ........................................... 8

   A. The Amended Complaint Fails To Allege An Actionable Instance Of End-User Copyright Infringement. ............................................................................................. 8

   B. The Amended Complaint Fails To Allege Microsoft's Knowledge Of Direct Infringement. ............................................................................................................... 9

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arista Recs., Inc. v. MP3Board, Inc.*,
  No. 00-cv-4660, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) .......................................... 10

*Arista Recs. LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ............................................................................................... 10

*Arista Recs., LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ................................................................................ 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 5

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
  536 F. 3d 121 (2d Cir. 2008) ............................................................................................... 5

*Como v. Commerce Oil Co.*,
  607 F. Supp. 335 (S.D.N.Y. 1985) ...................................................................................... 5

*Dress Barn, Inc. v. Klauber Bros., Inc.*,
  No. 18-cv-8085, 2019 WL 1949675 (S.D.N.Y. Apr. 22, 2019) .......................................... 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ............................................................................................................. 8

*Hartmann v. Amazon.com, Inc.*,
  No. 20-cv-4928, 2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) .......................................... 10

*Lopez v. Bonanza.com, Inc.*,
  No. 17-cv-8493, 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) .......................................... 10

*Matthew Bender & Co. v. West Publ'g Co.*,
  158 F.3d 693 (2d Cir. 1998) ................................................................................................. 9

*Melendez v. Sirius XM Radio, Inc.*,
  50 F.4th 294 (2d Cir. 2022) ................................................................................................. 9

*New London Assocs., LLC v. Kinetic Soc. LLC*,
  384 F. Supp. 3d 392 (S.D.N.Y. 2019) ................................................................................ 10

*P & L Dev., LLC v. Gerber Prods. Co.*,
  715 F. Supp. 3d 435 (E.D.N.Y. 2024) .................................................................................. 4

*Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*,
  105 F.4th 46 (2d Cir. 2024) ................................................................................................. 3

*Raw Story Media, Inc., v. OpenAI, Inc.*,
  No. 24-cv-01514, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024) .......................................... 2

*Saba Cap. Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*,
  88 F.4th 103 (2d Cir. 2023) ................................................................................................ 3

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ........................................................................................................... 8

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................................... 2

*State St. Glob. Advisors Tr. Co. v. Visbal*,
  431 F. Supp. 3d 322 (S.D.N.Y. 2020) .............................................................................. 10

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ......................................................................................... 6, 7

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) ........................................................................................................... 2

*Tremblay v. OpenAI, Inc.*,
  716 F. Supp. 3d 772 (N.D. Cal. 2024) ............................................................................... 9

*Victor Elias Photog., LLC v. Ice Portal, Inc.*,
  43 F.4th 1313 (11th Cir. 2022) ...................................................................................... 6, 7

**Statutes**

Copyright Act, 17 U.S.C. §§ 101 *et seq.*
  § 1202(b) ............................................................................................................. 1, 2, 4, 6, 7
  § 1202(c) ............................................................................................................................ 2
  § 1203(a) ............................................................................................................................ 2

**Other Authorities**

Federal Rules of Civil Procedure
  Rule 12(b)(6) ................................................................................................................. 4, 6

**PRELIMINARY STATEMENT**

Microsoft's Motion to Dismiss emphasized the complete absence from the Amended Complaint of any factual allegations concerning how actual users have used or would use the GPT-based tools at issue, or any substantiation for the notion that these tools have or will ever generate output that infringes CIR's copyrights.  CIR's opposition is filled with conjecture, hypothesis, imagination, and a half-dozen pleas for discovery—telltale confirmation of all the deficiencies pointed out by Microsoft.  Absent from CIR's opposition are any substantive factual allegations plausibly supporting CIR's claims for violations of § 1202(b) and contributory copyright infringement.

Those claims should be dismissed.  On the § 1202(b) claim, CIR cannot allege that its works have ever been disseminated without CMI, as required to establish a concrete Article III injury for which a CMI-removal claim can provide redress.  Plaintiffs' alternative theory of standing based on purported copyright infringement might have some legs for a copyright claim, but it does nothing to confer standing for a CMI claim.  *Infra* § I.  Even if CIR had standing, it can neither plausibly allege that *Microsoft* specifically removed CMI from any of CIR's works, nor that any CMI removal leads to any objective likelihood of infringement.  It offers nothing but conjecture about Microsoft's general collaboration with OpenAI—nowhere near enough to show that Microsoft actually participated in training OpenAI's models.  And the counsel-crafted hypotheticals about how removal of CMI could theoretically facilitate or conceal infringement ring hollow absent any real-world substantiation of any of it happening.  *Infra* § II.  Similar problems sink CIR's contributory infringement claims.  It points to no instance of actual end-user copyright infringement at all, let alone instances Microsoft was aware of and contributed to.  CIR's claim is based only on allegations of what some theoretical end-user could conceivably do.  That is not enough to survive a motion to dismiss.  *Infra* § III.  The Motion should be granted.

1

## ARGUMENT

### I. CIR LACKS STANDING FOR ITS CMI CLAIMS BECAUSE IT FAILS TO ALLEGE AN ACTUAL OR THREATENED INJURY.

As Microsoft's Motion explained (at 8-12), and as another judge of this Court has held, CMI removal, absent dissemination, is not "a concrete injury-in-fact sufficient to establish standing." *Raw Story Media, Inc., v. OpenAI, Inc.*, No. 24-cv-01514, 2024 WL 4711729, at *3 (S.D.N.Y. Nov. 7, 2024). Like the plaintiff in *Raw Story*, CIR's principal standing argument is that bare removal of CMI is analogous to the intellectual-property-based injury of "copyright infringement," which "has never required dissemination." Opp. 2, 15. The analogy has a basic problem: CMI is not property. It is not owned or alienable. It carries no exclusive rights or privileges. It is just "information conveyed in connection" with a copy of a work. 17 U.S.C. § 1202(c). Interference with the "integrity" of *information*, *id.*, bears no relationship to *infringement* of *property*. *Raw Story*, 2024 WL 4711729 at *3.

Perhaps recognizing as much, CIR argues that "through [the] technical process" by which CMI is allegedly removed, "Defendants … create further copies," and that this is "*prima facie* copyright infringement." Opp. 15. This is a bait-and-switch: CIR is trying to use an alleged copyright injury that might occur *in the process of CMI removal* to provide standing to seek redress *for the CMI removal itself*. That is not how standing works. "[A] plaintiff must demonstrate standing for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (citation omitted). Standing for a particular claim must therefore be predicated on the purported injury that claim seeks to redress. CIR's § 1202(b) claim seeks damages to redress CMI removal—indeed, Congress explicitly reserved § 1202 claims for "injur[y] by a violation of" that provision, 17 U.S.C. § 1203(a); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016) (emphasizing that "the

2

judgment of Congress … is instructive"). CIR's argument that it has standing to redress CMI removal because it suffered a copyright injury is therefore a non-sequitur.

Though CIR claims support (at 16) from *Saba Cap. Cef Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103 (2d Cir. 2023), that case in fact illustrates what CIR lacks. In *Saba*, the asserted injury was the impairment of "voting rights attached to … shares." *Id.* at 115. In finding that this impairment was "analogous to a property-based injury," *id.* at 116, *Saba* did not rely on the sort of ipse-dixit analogizing CIR advances here. It pointed to cases from multiple circuits treating voting rights as property interests appurtenant to share ownership—proverbial sticks in the bundle recognized by a century of precedent. *Id.* at 114-16. CIR offers no similar authority, nor any answer to Microsoft's extensive authority (Mot. 11) showing that "mere lack of attribution" is not a cognizable injury.

CIR's fallback theory is another head scratcher: That it "has standing because Defendants unlawfully profited from removing CMI." Opp. 20. That just begs the question of whether CIR has suffered a concrete injury. No case holds that by claiming the *defendant* "unlawfully profited" a *plaintiff* is somehow freed from the requirement of showing a concrete injury in the first place. The case CIR relies upon, *Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC*, 105 F.4th 46, 54 (2d Cir. 2024), holds no such thing. *See* Opp. 20-21. *Packer* observed that § 16(b) of the Exchange Act "compensates [plaintiffs] for the violation of" that provision. *Packer*, 105 F.4th at 53. But that was not the concrete injury—plaintiffs had standing because the injury suffered from the § 16(b) violation had a "close historical or common-law analogue" in "breach of fiduciary duty." *Id.* at 54. CIR points to no such injury.

Finally, CIR's last-ditch argument is that if dissemination is required, it "has alleged a dissemination-based injury, or at least deserves jurisdictional discovery." Opp. 21. This is

3

baseless. CIR alleges no real-world examples of any user obtaining outputs of its CMI-less works, and its own inability to coax such examples from any GPT-based product makes the prospect far-fetched. Mot. 21-25; *infra* 8-9. "[M]ere conjecture and conclusory non-fact-specific allegations" are not enough to engage in sweeping and invasive discovery. *P & L Dev., LLC v. Gerber Prods. Co.*, 715 F. Supp. 3d 435, 457 (E.D.N.Y. 2024). Because standing for a § 1202(b) claim requires an allegation of dissemination of the plaintiff's works, and because CIR can allege neither that this dissemination has occurred or is certainly impending, CIR lacks standing to pursue either damages or injunctive relief for purported § 1202(b) claims.

## II.  CIR FAILS TO STATE A § 1202 CLAIM.

CIR's § 1202(b)(1) and (b)(3) claims must also be dismissed under Rule 12(b)(6) for two independent reasons. First, the Amended Complaint does not plausibly allege that *Microsoft* removed CMI from copies of CIR's works or distributed copies lacking CMI. Second, the Amended Complaint does not plausibly allege that any purported removal of CMI or distribution of works would likely facilitate or conceal infringement. Mot. 13-21.

### A.  The Amended Complaint Does Not Plausibly Allege That Microsoft Removed CMI From Copies Of Works Or Distributed Works Lacking CMI.

As Microsoft's Motion explained, while the Amended Complaint includes numerous specific allegations concerning *OpenAI's* purported conduct in assembling data sets and training the GPT models, it does not and cannot allege that *Microsoft* engaged in this conduct. Mot. 14. CIR's three-paragraph response confirms this fatal defect.

CIR first says Microsoft "neglects CIR's allegations that Copilot outputs lack CMI," which "plausibly results from the removal of CMI during training." Opp. 35 (citing FAC ¶ 82, 119). But that allegation says nothing about whether *Microsoft* did the "removal" CIR claims occurred. As the Complaint admits, Copilot is built on "the OpenAI Defendants' GPT models."

Am. Compl. ¶ 52. And nothing in the Complaint suggests that Microsoft assembled datasets to train those models.

Weaker still, CIR invokes Microsoft and OpenAI's purported "close working relationship" as suggesting that it is "at least plausible that Microsoft used similar methods to OpenAI." Opp. 35. But it does not contest the established rule advanced by Microsoft that "[t]he fact that two companies … do work together" is insufficient "to attribute their acts to one another," Mot. 16 (quoting *Como v. Commerce Oil Co.*, 607 F. Supp. 335, 340 (S.D.N.Y. 1985))—a rule that forecloses CIR's theory based on Microsoft and OpenAI's collaboration. Similarly, CIR includes a drive-by reference to Microsoft's "provision of infrastructure" to OpenAI, yet fails to contest that "providing someone the technology and infrastructure that is used to commit some act is not the same thing as committing that act oneself," Mot. 16 (citing *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F. 3d 121, 131 (2d Cir. 2008)).

Last, CIR relies upon a few words from an interview of Microsoft CEO Satya Nadella saying that "we have the data, we have everything." From this snippet, CIR builds out an elaborate chain of conjecture from that general statement all the way to the ostensible conclusion that Microsoft stripped CMI from CIR's works or distributed CIR's works knowing they lacked CMI. Opp. 31-32. The *Iqbal* standard is not so meaningless. It requires "sufficient factual matter" to move "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009). Speculation about some buried premise in an off-topic, out-of-context quote from a magazine does not cut it.

> **B. The Amended Complaint Does Not Plausibly Allege A Likelihood That Removal Of CMI During Training Of An AI Tool Will Induce, Enable, Facilitate, Or Conceal Infringement.**

CIR's § 1202 claims also fail because the Complaint does not plausibly allege that the supposed removal of CMI during training would be likely to "induce, enable, facilitate, or

conceal an infringement." 17 U.S.C. § 1202(b);  Mot. 17-21.

CIR first resists any obligation to satisfy *Stevens v. Corelogic, Inc.*'s requirement that removal of CMI would create more than a "general possibility" of facilitating or concealing infringement.  899 F.3d 666, 675 (9th Cir. 2018); Opp. 26-27.  It claims that *Stevens* should not apply at the motion to dismiss stage.  But it makes no effort to distinguish the cases readily applying *Stevens* to dismiss complaints under Rule 12(b)(6) that fail to make plausible allegations of an objective likelihood of future infringement.  *See* Mot. 21 & n.3 (collecting cases).  And its argument that *Stevens* addresses the sort of "scienter" requirement typically inappropriate for decision on the pleadings misconstrues *Stevens*.  Opp. 26.  Though *Stevens* does address § 1202(b)'s "double-scienter" requirement, it applies an *objective* standard based on the commonsense rationale that when a defendant's technology is accused of causing a CMI violation, it has the requisite scienter only when "the probable future impact of" offering the technology would be the facilitation or concealment of infringement.  899 F.3d at 674.

CIR next claims that the Complaint offers "four reasons for which Defendants knew, or had reason to know, that removing CMI would induce, enable, facilitate, or conceal infringement." Opp. 27.  They are less "reasons" than theoretical suggestions, and Microsoft debunked each of them in its Motion.  *See* Mot. 18-20.

The first two theories—that "removing CMI during training would conceal [Defendants'] training-based" and "output-based infringement from their users," Opp. 27-28—are both legally and factually deficient.  As a matter of law, CIR cannot state a claim by alleging merely that infringement was undetected by users.  To "conceal" an infringement under § 1202's antipiracy provisions means to prevent *the rightsholder* from discovering it, thereby "impair[ing] their policing of infringement."  *Stevens*, 899 F.3d at 675; *see Victor Elias Photog., LLC v. Ice Portal,*

6

*Inc.*, 43 F.4th 1313, 1322-23 (11th Cir. 2022) (discussing impairment of "polic[ing] copyright infringement"). The mere allegation that removal of CMI conceals infringement from some hypothetical user establishes at most only that CMI removal "make[s] infringement easier in some general sense," which is insufficient under § 1202(b). *Victor Elias*, 43 F.4th at 1325 (citing *Stevens*, 899 F.4d at 673-74). In any event, CIR does not plausibly allege that removal of CMI conceals infringement any user would otherwise uncover. If a user receives a snippet of a protected work as an output, there is no reason—and certainly none alleged—why the presence or absence of CMI would make any difference to the user's ability or motivation to notice or react to any supposed training-based infringement.

The third theory is that "removing CMI would induce, enable, or facilitate users to infringe CIR's copyright by distributing infringing responses to a future audience," where they otherwise might not out of "respect [for] copyright or fear [of] liability." Opp. 29. What "infringing responses"? As discussed further in connection with CIR's copyright claims (at 8-10), the Amended Complaint alleges *at most* that someone could hypothetically request a summary of a *Mother Jones* article and get a description with a citation to the original. Mot. 20. That CIR is capable of imagining that someone could do this, then distribute this summary because, say, the author's name is omitted, hardly establishes that this fact pattern is "likely." In any event, CIR provides no non-conclusory theory substantiating the idea that its imagined user would behave differently if presented with more CMI. Opp. 30.

CIR's final theory is that "by removing CMI, Defendants facilitate their own training-based infringement," because "[r]emoving CMI at the outset [of training] prevented ChatGPT and Copilot from learning false things about how people use English." Opp. 30 (citing FAC ¶ 119). This theory is illogical. The alleged removal of CMI at the outset of training may

7

facilitate the broad goal of creating a fluent, conversational LLM, but CIR does not explain how it facilitates *infringement*. Mot. 18. CIR responds that "the infringing act is LLM training" generally, not "copying … conducted as part of the training process." Opp. 30. But infringement is the "copying of constituent elements of the work that are original," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)—not the mere act of creating a technology that might be used to infringe, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984).

### III. CIR FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT BASED ON OUTPUTS GENERATED BASED ON USER PROMPTS.

The Amended Complaint fails to allege a specific instance of end-user infringement or Microsoft's knowledge of any such act at the time it occurred. Mot. 21-25.

#### A. The Amended Complaint Fails To Allege An Actionable Instance Of End-User Copyright Infringement.

CIR does not contest that for Microsoft to have contributed to infringement of its works, CIR must allege instances of direct infringement by someone else. Opp. 11-12. CIR says that it has done so with "sufficient plausibility to warrant discovery," but the only support CIR offers is the allegation that Microsoft "commit[s] to defend and indemnify [users] against infringement claims." Opp. 12 (citing FAC ¶ 118). This is an illogical jump. The existence of a flood insurance policy does not plausibly suggest that a flood has occurred. Just the same, Microsoft's purported pledge to defend and indemnify a user *if* it is sued for infringement does not establish that any indemnitee has committed some actionable instance of copyright infringement (much less one that Microsoft knowingly contributed to).

Nor can CIR manufacture a claim by pointing to "infringing outputs" that it coaxed from GPT-based tools through its own litigation-driven prompting. Opp. 12. To begin with, an author cannot self-infringe its own works because it is logically impossible to make unauthorized use of one's own works. And nothing in the Amended Complaint remotely supports an inference that

8

someone in the real world has entered similar prompts to generate output that infringes CIR's works.  CIR says, for example, that the prompt "Tell me about the article 'Blood Money'" is an "undeniably realistic prompt," Opp. 12—while offering nothing to suggest any user ever has or would ask for summaries of random *Mother Jones* articles, nor explaining how a bare summary of an article along with citations to that article could infringe, Mot. 23.  In any event, this is not a game of "Come Up With A Realistic-Sounding Prompt."  CIR is advancing a legal claim that Microsoft contributed to an instance of infringement someone committed, but basing it on nothing but bare hypothesis.

The Second Circuit flatly rejected this claim-by-hypothesis tactic in *Matthew Bender & Co. v. West Publ'g Co.*, explaining that the plaintiff "failed to identify any primary infringer, other than [its own] counsel" who had used West's product in the allegedly offending way, 158 F.3d 693, 706 (2d Cir. 1998).  CIR suggests that because *Matthew Bender* was decided on summary judgment, it must be that a bare "'hypothesi[s]' [of] third-party infringement[]" means that "discovery should go forward." Opp. 12.  The Second Circuit has rejected this: "[C]onclusory assertions … of an impermissible use [and] hypotheticals in support of those conclusions" cannot "support a plausible … claim."  *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022); *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 777-78 (N.D. Cal. 2024) (dismissing secondary infringement claim at the pleading stage).

### B. The Amended Complaint Fails To Allege Microsoft's Knowledge Of Direct Infringement.

Independently, CIR fails to allege that Microsoft had legally sufficient knowledge of any act of infringement such that Microsoft could have contributed to it.  Mot. 24-25.  Microsoft's Motion explained that contributory liability is appropriate only where a defendant (a) has knowledge of "specific acts of infringement" and (b) has "actual knowledge," as opposed to

9

mere constructive knowledge, of those acts. *Id.* CIR spends its time arguing that "knowledge can be actual or constructive." Opp. 13. But this Court does not need to reach that issue because CIR so obviously fails to allege knowledge of *specific* acts of infringement.

CIR does not dispute that two circuits have demanded "specific knowledge" and that the Second Circuit has applied that requirement under the DMCA. *See* Mot. 24. And though CIR claims specific knowledge is "not required" in this circuit, the defendants in the cases CIR cites all had such knowledge.[1] CIR points to nothing close. Its only allegation concerning Microsoft's knowledge (versus OpenAI's) is another reference to Microsoft's "commit[ment] to defend and indemnify … users." Opp. 14. Reliance on indemnification is even weaker here. Providing an indemnity in no way suggests that Microsoft learned of any user infringement and contributed to it despite that knowledge. Courts routinely dismiss speculative contributory infringement claims at the pleading stage.[2] That is warranted here.

## CONCLUSION

The Court should grant the Motion in its entirety.

---

[1] *Arista Recs., LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 155 (S.D.N.Y. 2009) ("[O]n many occasions, Defendants' users explicitly told Defendants' … employees that they were engaged in copyright infringement[.]"); *Arista Recs., Inc. v. MP3Board, Inc.*, No. 00-cv-4660, 2002 WL 1997918, at *7 (S.D.N.Y. Aug. 29, 2002) ("posted links [to infringing music] themselves promoted their illegal nature"); *Arista Recs. LLC v. Doe 3*, 604 F.3d 110, 121 (2d Cir. 2010) ("identif[ication] on a Defendant-by-Defendant basis …[of] the IP address with the date and time of capture and a list of copyrighted recordings that each Defendant has … downloaded and/or distributed").

[2] *Hartmann v. Amazon.com, Inc.*, No. 20-cv-4928, 2021 WL 3683510, at *7 (S.D.N.Y. Aug. 19, 2021); *Lopez v. Bonanza.com, Inc.*, No. 17-cv-8493, 2019 WL 5199431, at *24- 25 (S.D.N.Y. Sept. 30, 2019); *Dress Barn, Inc. v. Klauber Bros., Inc.*, No. 18-cv-8085, 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 358 (S.D.N.Y. 2020); *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 410 (S.D.N.Y. 2019).

| | |
|---|---|
| Dated:  New York, New York<br>November 19, 2024 | Orrick, Herrington & Sutcliffe LLP<br><br>By:  /s/ *Annette L. Hurst*<br>Annette L. Hurst (*Pro Hac Vice*)<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105-2669<br>Telephone: (415) 773-5700<br>Facsimile: (415) 773-5759<br>ahurst@orrick.com<br><br>Christopher J. Cariello<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone: (212) 506-3778<br>Facsimile: (212) 506-5151<br>ccariello@orrick.com<br><br>Sheryl Koval Garko (*Pro Hac Vice*)<br>222 Berkley Street<br>Boston, MA 02116<br>Telephone: (617) 880-1800<br>Facsimile: (617) 880-1801<br>sgarko@orrick.com<br><br>Laura Brooks Najemy (*Pro Hac Vice*)<br>222 Berkley Street<br>Boston, MA 02116<br>Telephone: (617) 880-1800<br>Facsimile: (617) 880-1801<br>lnajemy@orrick.com<br><br>*Attorneys for Defendant*<br>*Microsoft Corporation* |