# EXHIBIT A

**Key:** Green represents Plaintiffs' filing; Purple represents Defendants' filing.

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Pending Motions – News |||||||| 
| **Document Discovery & Inspection Issues** |||||||| 
| Dkt. 377 (Sealed Filing) Dkt. 376 (Public Filing) | 7/29/25 | Dkt. 417 | NYT's destruction of evidence of its use of OpenAI's LLMs | OpenAI | NYT | The dispute is fully briefed and the Court has not yet heard argument. | **OpenAI's Position:** The Times—while asserting in this litigation that OpenAI's models are non-transformative and harmful—used those same tools internally to advance its journalism and subscription strategies. Such uses are directly relevant to fair use and substantial non-infringing use defenses. Yet, The Times permanently destroyed all logs of this usage from at least November 2023 to March 2024, during a critical period including the months leading up to and after The Times filed suit. This destruction occurred long after The Times was obligated to preserve this data. Moreover, its Rule 30(b)(6) witness provided misleading statements and failed to disclose the data deletion despite the deposition occurring six months after the Times now admits it discovered it failed to retain the logs. The Times further represented to the Court that it was complying with its preservation obligations, at the same time that it was actively concealing the data's destruction.<br><br>The Times now seeks to excuse its data destruction by claiming that it has consistently maintained that the data was irrelevant–to the contrary, after The Times's Rule 30(b)(6) deposition, The Times indicated it was "amenable" to producing a subset of the data, only reneging after OpenAI raised the spoliation issue. OpenAI is also unaware of what is reflected in the "16 months of [ChatExplorer] logs" The Times claims to have retained. The Times's documents indicate that ChatExplorer was discontinued in March 2024, and The Times refuses to clarify how it continued to use OpenAI products after that date. OpenAI asks the Court to order the limited additional discovery of a 4-hour Rule 30(b)(6) deposition related to The |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Times' destroyed evidence and production of the remaining relevant logs. This time is necessary for OpenAI to investigate the preservation and data destruction issues The Times Rule 30(b)(6) designee was unprepared to cover, including: (i) The Times's admittedly faulty implementation of its original Sumo Logic retention policy, (ii) The Times's actions when it received OpenAI's preservation-demand letter; (iii) the discovery of, and ensuing failure to disclose, the deletion of Sumo Logic data, and (v) the other, undisclosed interfaces used by the Times that rely on OpenAI's GPT models, and preservation of evidence related to such interfaces.<br><br>**The Times's Position:** The Times has declined to produce its ChatExplorer logs not because it "destroyed" those logs, but because they are irrelevant. As The Times has repeatedly told OpenAI, it has 16 months of logs preserved—that is, the large majority of the logs made since ChatExplorer's launch. When OpenAI raised its belief in the relevance of these logs, The Times sought to confirm that a hold had been placed on its ChatExplorer logs. When The Times subsequently discovered a hold had not been correctly implemented, it immediately corrected the issue and thus retained the vast majority of these logs.<br><br>However, at no point has The Times agreed to produce any of these logs, nor should this Court order it to do so. They have no connection to OpenAI's defenses and would require substantial review that is unwarranted given the lack of relevance; OpenAI has also refused any proposal to narrow its request. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Finally, OpenAI has failed to explain what it hopes to gain from four more deposition hours. The Times has already answered detailed questions from Defendants about SumoLogic and ChatExplorer, and its 30(b)(6) representative was extensively prepared. |
| Dkt. 392 (Public Filing) Dkt. 396 (Sealed Filing) | 7/30/25 | Dkt. 427 | Production of Data from ChatExplorer | Microsoft | The Times | The dispute is fully briefed and the Court has not yet heard argument. | **Microsoft's Position:** Microsoft moves to compel The Times to produce all remaining data from ChatExplorer—its internal generative AI tool that employs the GPT models at issue in this litigation—stored on the Sumo Logic repository. Use of Defendants' generative AI tools is a proper area of discovery to assess the substantial noninfringing uses of the accused technology. The Sumo Logic data is highly relevant to that complete defense to contributory infringement. This data is also relevant to whether Defendants' generative AI tools (used for pro-copyright purposes like research and news reporting) are transformative under the first fair use factor. There is no associated burden to The Times producing less than a thumb drive of data, which is highly unlikely to contain privileged matter given The Times's representation that its legal department does not use this tool.  The Times initially agreed to produce at least a portion of the data during meet and confer with OpenAI, but reversed course and refused to produce any data during meet and confer with Microsoft and OpenAI on July 24.  All of the data is relevant and is stored in a central repository.  It is not custodial discovery.  This small data set should be produced.<br><br>**The Times's Position**: The Court should not order The Times to produce ChatExplorer logs, as they have no connection to Microsoft's |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | defenses and would require substantial review that is unwarranted given their lack of relevance. First, Microsoft's substantial noninfringing uses defense is not at issue in this case because The Times has not alleged contributory infringement by inducement. And, even if it were, Microsoft has failed to provide a basis for why it needs this burdensome discovery into The Times's ChatExplorer logs to prove this defense. Second, Microsoft's reliance on the fair use defense fares no better. The Times has already produced extensive documentation on its uses of Defendants' products (e.g., documents about the AI Initiatives program, guidelines on Times employees' use of Defendants' products, research regarding how GenAI can benefit The Times's audiences). Microsoft has also made no attempt to meet-and-confer to narrow this overbroad request for more than 80,000 logs involving 58 different Times employees. |
| Dkt. 380 | 7/30/25 | Dkt. 426 | Microsoft 30(b)(6) Deposition | News Plaintiffs | Microsoft | The dispute is fully briefed and the Court has not yet heard argument. | **News Plaintiffs' Position**: News Plaintiffs seek an order requiring Microsoft to put up a 30(b)(6) deponent on topics concerning its metrics tracking dashboards for a deposition occurring no later than August 15, 2025. This Court previously heard argument on New Plaintiffs' prior motion seeking to compel Microsoft to produce documentation about their metric-tracking dashboards (i.e., dashboards that can be queried to generate data about how users engage with Defendants' products). *See* Dkt. 157. The Court denied that motion and ordered that "News Plaintiffs may conduct a 30(b)(6) deposition" on this topic. *See* Dkt. 270. News Plaintiffs promptly served a 30(b)(6) deposition notice limited to topics concerning Microsoft's metrics tracking dashboards, but, to date, Microsoft has refused to provide a date certain |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | for the deposition to take place. News Plaintiffs believe this deposition should occur as soon as possible to facilitate efficient discovery into the metrics responsive to News Plaintiffs' RFPs. News Plaintiffs first served their list of anticipated 30(b)(6) topics in March. News Plaintiffs provided dates in July for nine Times deponents' depositions between August and September, but Defendants have yet to agree to any of those dates.<br><br>**Microsoft's Position:** The Court has never indicated that News Plaintiffs' 30(b)(6) deposition on topics concerning Microsoft's metric tracking dashboards should be expedited, either during the hearing or in its Order. The Court did specifically note that the deposition time will count toward News Plaintiffs' overall time. Dkt. 270 at 3. News Plaintiffs just provided their list of 30(b)(6) deposition topics on July 31. Microsoft understands that this is a priority deposition for News Plaintiffs and has agreed to schedule the deposition promptly after it has had an opportunity to fully review News Plaintiffs' 30(b)(6) topics to identify the appropriate witness to testify about the dashboards and any other topics within his or her scope. Microsoft will propose dates for that witness near the beginning of the deposition period, which the parties anticipate will begin in September, and this motion should be denied. |
| *Times* Dkt. 487<br><br>MDL | 3/31/2025<br><br>7/28/25 | *Times* Dkt. 508<br><br>MDL | News Plaintiffs seek discovery into all versions of Microsoft's "Copilot" | News Plaintiffs | Microsoft | The Court heard argument on this dispute at the May 27, 2025 | **Plaintiffs' Position:** This motion to compel addresses two issues relating to Microsoft, which were argued at the May 27, 2025 hearing.<br><br>*First,* News Plaintiffs request discovery into all versions of Microsoft's "Copilot" product. News |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 372 | | Dkt. 409 | product and inspection of the "Deucalion" LLM | | | discovery hearing but has not yet issued a ruling on this dispute. | Plaintiffs shortly before filing this motion learned that Microsoft has not been providing discovery into its current version of "Copilot"—which was launched October 1, 2024—on the ground that it is a new product that is not covered by the allegations in the Complaints.  After the Court heard argument on this issue at the May 27 hearing, the Court indicated it may prefer to defer ruling on this issue until the June 26, 2025 technical tutorial. May 27, 2025 Hearing Tr. at 112:18-24.  As demonstrated by Microsoft's technology tutorial and explained in News Plaintiffs' supplemental letter (Dkt. 372), the current version of Copilot looks and functions nearly identical to the "original" version of Copilot accused in New Plaintiffs' complaints. Furthermore, the model underlying M365 Copilot (a product that Microsoft demonstrated at the technology tutorial and agrees is in the case), GPT-4o, is the same model used by the current version of Copilot  and has been the subject of discovery among Plaintiffs and OpenAI for over a year. Microsoft refutes News Plaintiffs' evidence showing that GPT-4o powers M365 Copilot on the ground that the webpage cited by News Plaintiffs refers to yet another "different" product, "Microsoft 365 Copilot Chat." However, the blog post cited in footnote 2 of Microsoft's brief shows that these two "products" include the same features, with the demoed M365 Copilot having a few additional "personal assistant" features available for an organization to license. At bottom, Microsoft's technology tutorial proved what News Plaintiffs have argued all along—the current version of Copilot infringes News Plaintiffs' copyrights and harms News Plaintiffs in the same manner alleged in News Plaintiffs' |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | complaints. Microsoft should be compelled to provide discovery into all versions of Copilot. <br><br> *Second*, News Plaintiffs request access to inspect Microsoft's "Deucalion" LLM, which is based on an OpenAI GPT model that Microsoft fine-tuned at OpenAI and commercially deployed in the Copilot product deprecated on October 1, 2024. The model is relevant to News Plaintiffs allegations concerning model memorization, including: (1) the model itself is infringing and not transformative (*e.g.*, because it encodes copies of the asserted works), and (2) memorized (or regurgitated) outputs are further evidence of the extent and nature of Defendants' unauthorized use of News Plaintiffs' content during training and as part of Copilot's outputs. On this issue, the Court at the hearing indicated it would "take a look at the briefing, and if there are follow-up questions I have on that, I will ask for supplemental briefing." May 27, 2025 Hearing Tr. at 125:17-19. <br><br> **Microsoft's Position:** News Plaintiffs' motion concerning two unrelated discovery requests should be denied. *First*, Microsoft's Copilot-branded product released on October 1, 2024 ("New Consumer Copilot") is a new product that did not exist at the time the Complaints were filed, and the Court has previously denied expanded discovery of the kind that News Plaintiffs seek. *See The Times* ECF 365 at 5; *see also* ECF 60 at 2 (Judge Stein ordering amended complaint to have same product scope). The Court did so for very good reasons. As demonstrated at the technology tutorial, New Consumer Copilot is built on a different platform with new system architecture |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | than the products named in News Plaintiffs' Complaints and involves hundreds of potential new custodians given that the back-end code was written by a team primarily comprised of new Microsoft employees. As a result, providing News Plaintiffs with the requested relief would mean that discovery would have to start over. The motion should be denied. *Second*, News Plaintiffs' demand to test a bare model called Deucalion is disproportionate to the needs of the case. Deucalion, a fine-tuned version of GPT3.5 Turbo, was never made available to the public in the form in which News Plaintiffs seek to test it, i.e., without metaprompts, filters, and output mitigations integrated into the consumer-facing product. There were and are other avenues to obtain relevant information. News Plaintiffs' request to inspect a model in a form it was never offered to the public should be denied. |
| Dkt. 375 (Sealed Filing) Dkt. 374 (Public Filing) | 7/29/25 | Dkt. 416 | NYT's deficient privilege claims and documents improperly withheld as privilege | OpenAI | NYT | The dispute is fully briefed and the Court has not yet heard argument. | **OpenAI's Position:** OpenAI seeks an order compelling The Times to produce two highly responsive categories of documents it has improperly withheld as privileged. *First*, The Times has withheld all versions of a GenAI Training Module distributed to hundreds, if not thousands, of The Times employees to inform them how they might incorporate GenAI—including OpenAI's LLMs—into daily tasks ranging from reporting to business operations. *Second*, The Times has refused to produce presentations given to senior leadership regarding The Times's use of GenAI at the company. The limited information The Times has produced about both categories of documents shows that they are business communications created and disseminated by non-lawyers, not legal advice. There is no inconsistency in OpenAI's position— |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | OpenAI is not withholding as privileged *all* versions of documents *created by non-lawyers* that are distributed to *hundreds, if not thousands, of employees*. The Times does not dispute this information in its opposition or submit declarations from the attorneys it claims contributed to these documents.  Evidence of the Times's own affirmative use of (and discussion of potential use cases for) ChatGPT is critical to rebut The Times's argument that OpenAI's LLMs necessarily dilute the market for its works (rather than assist it in producing high-quality reporting or providing other useful assistance to their business). This evidence also demonstrates that the Times knows there are substantial non-infringing uses of OpenAI's LLMs that even the Times's own employees have received training about. <br><br> **The Times' Position:**  As an initial matter, The Times notes that there is a significant inconsistency between OpenAI's position here and its argument that dissemination of training documents to non-lawyer employees does not necessarily break privilege for its own documents. This can be explored more fully once OpenAI produces a complete privilege log. <br><br> Here, the GenAI Training Module was prepared at the direction of in-house counsel to ensure that Times employees were utilizing Generative AI tools in a legally compliant manner, and to inform employees of the risks associated with failing to do so. Indeed, twelve Times attorneys played a role in preparing, editing, and finalizing the module.  Similarly, with respect to the presentations at issue, The Times's in-house counsel—Diane Brayton and Shushana |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Jachobov—contributed to them. Without delving into the substance of the presentations, they concern The Times's assessment of its intellectual property and potential litigation against Defendants. As the law of this District makes clear, the attorney client privilege protects the dissemination of such confidential communications to the corporation's employees. |
| Dkt. 381 | 7/30/25 | Dkt. 433 | Substantial completion of document productions | OpenAI | Ziff Davis | The dispute is fully briefed and the Court has not yet heard argument. | **OpenAI's Position:** OpenAI asks the Court to set September 30, 2025, as Ziff Davis's deadline to substantially complete production of documents responsive to OpenAI's pending discovery requests. Ziff Davis refuses to exchange search terms and hit counts, let alone set a date certain for substantial completion, until August 15—more than a month after serving its responses to the vast majority of OpenAI's discovery requests. That refusal violates the Court's scheduling order, which requires the parties to meet and confer on a substantial completion deadline within 30 days of service of Ziff Davis's RFP responses. *See* Dkt. 238 2-3 n.2. Although Ziff Davis asserts otherwise, OpenAI attempted to raise this issue on a telephonic meet and confer (though Ziff Davis rebuffed that attempt) and, prior to filing, clearly informed Ziff Davis that it intended to seek relief from the Court if Ziff Davis would not commit to a substantial completion date before August 15. OpenAI followed through because this issue needs to be resolved now. Discovery in this case is already well behind the other matters. Waiting weeks to even begin negotiating a substantial completion deadline—as Ziff Davis proposes—would only widen the gap. (For its part, OpenAI sent Ziff Davis proposed search terms and hit counts several weeks ago). Given Ziff Davis's prior scheduling proposals seeking a June 24 substantial completion date and November 21 fact |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | discovery cutoff, it should have no problem meeting OpenAI's proposed deadline. The Court should order it to do so.<br><br>**Plaintiffs' Positions:**  OpenAI's motion is premature, mischaracterizes the parties' email discussions, and was made without seeking a telephonic meet and confer. Ziff Davis has not refused to exchange search terms and hit counts – the Parties have agreed to exchange lists of custodians, search terms and hit counts on August 15, 2025. Ziff Davis has agreed to meet and confer on that same date (August 15) as to a date certain for the substantial completion of its document production in response to OpenAI's June 12, 2025 requests for production. As Ziff Davis does not yet know the full volume of documents for this production, it cannot yet provide a date certain for substantial completion but intends to be able to do so by August 15. Ziff Davis explained this to OpenAI by email but OpenAI filed its motion without any further effort to meet and confer. Ziff Davis is committed to rapidly completing fact discovery and complying with the scheduling order, which contrary to OpenAI's description sets a substantial completion of September 12 for requests served before May 22 (most such extant requests were served long before that date), and requires the parties to meet and confer as to a substantial completion date for requests served thereafter, as they were doing before OpenAI precipitously filed this motion. It is a waste of this Court's time and resources to hear a motion seeking to compel Ziff  Davis to immediately set a date for substantial completion when Ziff Davis is prepared to provide such date on August 15. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 383, Dkt. 384 | 7/30/25 | Dkt. 425, Dkt. 431 | Production of Reports and Analyses of Cancellation Survey Results Involving GenAI | Microsoft | The Times | The dispute is fully briefed and the Court has not yet heard argument. | **Microsoft's Position:** The Court has expressly allowed discovery into The Times's cancellation surveys that provided AI as a possible cancellation reason. Dkt. 82 at 9. While The Times has produced the underlying survey data, it has refused to produce all analyses of those survey results. These documents are directly relevant to The Times's alleged harm and the fourth factor of Microsoft's fair use defense because they will demonstrate whether The Times, when it analyzed and interpreted these surveys, believed that Defendants' AI tools were impacting its subscriber rate and the extent of any such impact. The fact that The Times has provided some analyses to the extent they were included in other documents that have been produced (i.e., audience reports) does not absolve The Times from producing *all* such analyses—it cannot simply cherry-pick the discovery it wants to produce in response to Microsoft's Requests. Given that The Times has represented that it has only run one such survey, the burden in searching for and producing analyses of these results should be minimal, and in any event has not been articulated by The Times.<br><br>**The Times's Position**: This is Microsoft's most recent attempt to relitigate an issue that this Court has already decided. Specifically, Microsoft previously sought to compel "subscription cancellation information" including "reasons for any cancellation of subscription to The Times," "surveys and responses regarding cancellation subscriptions," and "studies regarding the reasons for any cancellations of subscriptions to The Times." Dkt. 315. This Court denied Microsoft's request, see Dkt. 351, and Judge Stein affirmed that order, see Dkt. 592. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Consistent with its prior ruling on this very issue, the Court should again deny Microsoft's motion. To the extent the Court is willing to entertain Microsoft's motion, The Times has already agreed to produce audience reports, Audience Insight Group analyses, and swathes of other documents that bear directly on Microsoft's requests. As such, Microsoft's instant motion for reports, analyses, or presentations related to survey data that The Times has already produced seeks irrelevant information and is disproportionate to the needs of the case—especially in light of what The Times has already agreed to produce. |
| **Data Sampling** | | | | | | | |
| Dkt. 394 | 7/30/25 | Dkt. 435 | Sample of OpenAI ChatGPT output logs | News Plaintiffs | OpenAI | The dispute is fully briefed and the Court has not yet heard argument. | **News Plaintiffs' Position**: News Plaintiffs request a sample of OpenAI's historical ChatGPT output log consisting of 120 million total conversations (representing approximately 0.28% of the total population). The requested 120 million sample size corresponds to 5 million samples per month over a 24-month period. To begin, both parties agree that the 5 million sample size, derived using Cochran's formula, is an appropriate sample size. However, the parties disagree on the frequency of sampling Sampling at News Plaintiffs' proposed volume (i.e., 5 million samples) and frequency (i.e., monthly) is necessary to properly account for the dozens of changes and new features of ChatGPT over the 24-month period that impact the way ChatGPT surfaced and interacted with copyrighted content. These changes and features include six families of LLM models at issue (GPT-3.5, GPT-3.5 Turbo, GPT-4, GPT-4 Turbo, GPT-4o, and GPT-4o Mini), and specific |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | versions of these models (e.g., gpt-4o-2024-05-13, gpt-4o-2024-08-06, and gpt-4o-2024-11-20). They also include features such as Browse, SearchGPT, and the five custom GPTs at issue that were available for only limited periods of time. For example, OpenAI initially released the Browse feature incrementally; then removed it after concerns surfaced over its bypassing of paywalls; and then later reintroduced it, making at least three different sample populations necessary just for this feature. OpenAI has also introduced News Plaintiff-specific blocks and guardrails at different times, the effectiveness of which OpenAI has put at issue in these cases. To be able to analyze in a statistically significant manner each of these product variations, News Plaintiffs need to sample 5 million conversations per month. This approach is consistent with the parties' agreement on sampling the preserved ChatGPT data over a 30-day period, where the parties agreed on multiple populations each of 5 million samples. By contrast, OpenAI's proposed 20 million total sample size (e.g., 5 million samples over a 6 month time interval) does not provide News Plaintiffs with enough samples to study material changes to ChatGPT over time. OpenAI's response does not refute that there are many short-term changes made to ChatGPT over the twenty-four month period that would have a material impact on the prevalence rate of infringement in the output log data. OpenAI also overstates the burden required to process the data, which will largely be conducted by programs running on co-Defendant Microsoft's compute resources, and introduces a bespoke de-identification process that introduces several complications of OpenAI's own making. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | **OpenAI's Position:** News Plaintiffs' demand for 120 million conversations—a sample 24 times larger than the sample ordered in the *Concord v. Anthropic* litigation—is completely impracticable and would delay this litigation by months. OpenAI's data infrastructure is complex, and generating a sample of conversation records involves retrieving, decompressing, processing, de-identifying, and storing the data. Doing that for 20 million records would take several *weeks*; doing it for 120 million records could take several *months*, threatening to disrupt the case schedule, and could cost nearly $1 million (in addition to diverting OpenAI engineers from their operational duties for months). Taking such an extraordinary step would yield no discernible statistical benefit: in fact, News Plaintiffs *concede* that a 20 million log sample is more than sufficient to study ChatGPT's behavior between December 2022 and November 2024. They claim to need more so that they can study changes in ChatGPT's behavior over time. But a 20 million log sample is more than sufficient to also enable this change-over-time analysis, as OpenAI's expert found. OpenAI asked News Plaintiffs to supply any statistical analyses to the contrary, but they ignored the request and instead filed their motion and accompanying expert declaration, neither of which includes any analysis on this issue. Even News Plaintiffs' position statement above does not dispute that they have failed to present any statistical analyses suggesting that 20 million logs is insufficient to draw statistical conclusions about the impact of the product changes they want to study. In other words, News Plaintiffs have not |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | even attempted to justify their extraordinarily burdensome and time-consuming request for 120 million logs, which should be rejected. |
| [Dkt. 398](Dkt. 398) | 7/30/25 | N/A (see Dkt. [403/404](Dkt. 403/404) & Dkt. [410](Dkt. 410)). | API and ChatGPT output log data | News Plaintiffs | OpenAI | See Parties' Position Statements. | On July 31, 2025, the parties jointly requested that "the Court convene a confidential settlement conference the week of August 4, 2025 in lieu of further briefing or oral argument" on this motion. Dkt. 410. If the Court does not hold a settlement conference before the August 12 hearing, then News Plaintiffs request that this motion be heard at the August 12 hearing.<br><br>**News Plaintiffs' Position**: The parties have reached agreement on several issues relating to sampling of the ChatGPT output log data that OpenAI has been ordered to preserve and OpenAI should proceed with sampling and running those searches promptly. But three areas of disagreement remain, and News Plaintiffs seek an order from the Court (1) requiring OpenAI to include API data in the sampling of the now-preserved output log data, (2) rejecting OpenAI's premature limitation on the use of the results of the sampling exercise; and (3) rejecting OpenAI's cost shifting provisions in the proposed sampling protocol order. <u>First</u>, News Plaintiffs contend that API data should be included as part of the sampling and search protocol. News Plaintiffs are prejudiced by OpenAI's deletion of nearly all of the API data, and it has so far refused to provide any sample of the retained API data. News Plaintiffs' request to run the search terms over the now-preserved API data is neither a new request nor has it been rejected by this Court. New Plaintiffs have been seeking to sample OpenAI's API output log data for well over a year. During the May 27 discovery conference, |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | the Court instructed the parties to meet and confer to figure out whether "non-content data" (e.g., classifiers) could be used to probe the relevancy of the now-preserved API data. Still, the Court explained that solely relying on non-content data would be appropriate "if this use of classifiers and non-content information can get the plaintiffs what they need." May 27, 2025 Hearing Aft. Tr. at 51:5-20. Before filing its cross-motion (Dkt 404), OpenAI represented to News Plaintiffs that the now-retained API data did not include any classifier information. Nevertheless, the limited historical classifier data OpenAI produced in the Appendix to its Motion confirm that a substantial percentage of API queries relate to "journalism," "info_about_current_events_and_news," and other relevant news-related use cases. But News Plaintiffs cannot ascertain the prevalence of copyright infringement from the classifier data alone, and an order compelling OpenAI to run the agreed upon search terms over the API data will provide information that will help News Plaintiffs and this Court assess the relevance of the API data to the Rule 37(e) analysis, including, for example, the current prevalence of prompts requesting news content and outputs providing such content, as well as references to the News Plaintiffs (and known infringers of News Plaintiffs' content). <br><br> Second, OpenAI's July 25 proposal included, for the first time, a clause requiring that any data or analysis derived from this sampling exercise "only be used for the sole purpose of preparing the joint letter" to the Court. News Plaintiffs contend that use of the results of this sampling should not be limited, and at any event, should |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | not be limited before the parties have had a chance to analyze the results. Appropriate measures to remedy prejudice under Rule 37(e) include permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument.<br><br>Third, News Plaintiffs contend that cost shifting is not appropriate. Nothing in the record justifies shifting the usual presumption that a party must bear its own discovery costs, particularly in these circumstances where OpenAI deleted significant portions of its output logs.<br><br>Class Plaintiffs, Ziff Davis, and The Intercept have not moved on this issue but respectfully request that they be included in any settlement conferences regarding these issues. See Dkt. 434.<br><br>**OpenAI's Position**: News Plaintiffs' motion seeks to frustrate the clear plan laid out by the Court for resolving the Preservation Order dispute: For ChatGPT, the parties should sample and search the preserved "consumer output log data." ECF 79. For API, the Court the parties should address any Rule 37(e) concerns through "non-content data" like "classifiers." 05.27.2025 Aft. Tr. 51:5–24. OpenAI has done precisely what the Court ordered: for ChatGPT, OpenAI stands ready to run searches on a sample of preserved ChatGPT data; and for the API, OpenAI has offered to produce historical classifier data for the API. (News Plaintiffs' claim that OpenAI "represented that it does not have classifier data" is completely false. ECF |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | 398.) That historical classifier data will show whether API usage changes over time, which will allow the Court to evaluate whether the 30 days' worth of API data OpenAI retains at any given time is materially different from the API data that OpenAI's agreements and policies required it to delete. (OpenAI provided News Plaintiffs with a detailed specification of its API classifiers over a month ago, and News Plaintiffs have made no attempt to explain why those classifiers will not be sufficient for the Court's Rule 37(e) evaluation.)<br><br>News Plaintiffs, however, are blocking this process until OpenAI also agrees to run searches on raw API data — a late-breaking request that this Court has already rejected, *see* 05.27.2025 Aft. Tr. 51:5–24, and would do nothing to move the ball forward. The Court should reject that attempt to hold the privacy of OpenAI's users' hostage to secure a litigation advantage.<br><br>Above, News Plaintiffs insist on running searches on API data because they "cannot ascertain the prevalence of copyright infringement from the classifier data alone." But the purpose of this exercise is not to evaluate infringement, but rather to "aid in the Court's Rule 37(e) analysis." ECF 217. The classifier data (which, again, News Plaintiffs have not yet examined) will be far more probative than hit counts on their search terms (e.g., "nyt," "cir," "intercept," and "paywall," see ECF 268-2), which will result in misleading false positives that News Plaintiffs will use to confuse the issues. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Similarly, the Court should clarify that the hit counts from the searches of preserved ChatGPT data may only be used for the limited purpose of evaluating the need for wholesale preservation and aiding the Court's Rule 37 analysis. News Plaintiffs' argument that they should be able to use those results for any purpose whatsoever **(i)** is yet another late-breaking request, *see, e.g.*, ECF 171 (News Plaintiffs failing to object after OpenAI proposed a narrower restriction in its June 6, 2025 submission at ECF 105 ¶5), **(ii)** fundamentally misunderstands and moves the goalposts the Court set for this narrow exercise, *i.e.*, to "aid in the Court's Rule 37(e) analysis," ECF 217 (Order), and **(iii)** depends entirely on the separate improper request that this protocol should include the API (contrary to the Court's guidance).  Finally, the Court should adopt OpenAI's proposed cost-shifting, which would allow OpenAI to recover a narrow slice of its technical costs in the event that (a) after analyzing the hit counts, News Plaintiffs continue to demand wholesale preservation and (b) the Court disagrees with them. ECF 403-2. |
| Dkt. 404 (Sealed Filing) Dkt. 403 (Public Filing) | 7/30/25 | N/A (see Dkt. 398 & Dkt. 410) | Sampling Protocol regarding preserved ChatGPT output data | OpenAI | News Plaintiffs | See Parties' Position Statements. | On July 31, 2025, the parties jointly requested that "the Court convene a confidential settlement conference . . . in lieu of further briefing or oral argument" on this motion. Dkt. 410. **OpenAI's Position:** OpenAI requests that the Court enter a protocol for searching a sample of the preserved ChatGPT consumer output data, consistent with its prior May 29 order requesting a protocol for sampling and searching "consumer output log data." OpenAI has been ready to begin running searches on the preserved ChatGPT consumer conversation data, and, after extensive discussions with News Plaintiffs, the Parties have |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | largely agreed on a methodology for doing so. However, News Plaintiffs are refusing to proceed unless OpenAI also agrees to sample and search data from its API, a business-facing, non-consumer product entirely distinct from ChatGPT. The Court already considered and rejected that request at the May 27 conference, directing the parties to instead address any Rule 37(e) concerns as to the API through metadata, which is exactly what OpenAI has done by offering to produce historical API classifier data. OpenAI is eager to move forward so that the Preservation Order can be lifted. But by blocking any progress until their demands are met, News Plaintiffs are holding the privacy of OpenAI's users hostage to secure an undue litigation advantage. The Court should reject that tactic and enter a protocol for running searches on the preserved ChatGPT data as soon as possible. And while News Plaintiffs appear to agree that OpenAI should "proceed expeditiously," they notably have no response to, and refuse to reconsider their attempts to frustrate the process, i.e., when they told counsel for OpenAI on July 29, 2025 that they would refuse to agree to any protocol that did not also include a search of enterprise API data. ECF 403-3.<br><br>**Plaintiffs' Positions:** News Plaintiffs agree that OpenAI should proceed expeditiously with preparing the agreed-upon ChatGPT sample populations and running the agreed-upon search terms over those sample populations. But for the reasons explained above in connection with News Plaintiffs' Motion at Dkt. 398, this Court should adopt News Plaintiffs' protocol, which: (1) includes provisions for sampling and searching the preserved API data, (2) rejects OpenAI's limitations on the use of the search results in the |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | litigation, and (3) rejects OpenAI's purely hypothetical cost-shifting provision that is not supported by the record. |
| **Other Updates - News** | | | | | | | |
| [NYT 311](#) | 11/18/24 | [NYT 338](#) | Microsoft's Log Output Data | News Plaintiffs | Microsoft | The Court heard argument at the January 22, 2025 conference, and ordered the Parties to meet and confer and to provide a status update in the February 13 chart (Dkt. 462). | **News Plaintiffs' Position:** Following extensive discussions and correspondence on this issue, News Plaintiffs most recently sent a compromise request on July 8, 2025 for a sample of 5 million conversations for each month of output data over the 15 months of available data (from July 2023 to October 2024), for a total of 75 million total samples. Microsoft represented in a Friday, July 11 meet and confer that it needed to know what fields of the output data News Plaintiffs wanted produced in order to ascertain the feasibility of the request. News Plaintiffs followed up on Monday, July 14 with the requested fields. As of July 24, Microsoft has said it is continuing to investigate.<br><br>**Microsoft's Position:** Microsoft has continued to meet and confer with News Plaintiffs, including by suggesting that News Plaintiffs limit the sample to relevant data fields and exclude hundreds of irrelevant fields, which in turn would improve News Plaintiffs' potential sampling methodology. Microsoft further explained its suggestion during a July 11 meet and confer. News Plaintiffs then sent a list of over 342 fields to include in the sample as potentially relevant. Microsoft is investigating the nature of the information contained in each of these fields to determine which are truly relevant and will provide that information to News Plaintiffs as soon as it is able. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 144 (Sealed Filing) <br><br> Dkt. 146 (Public Filing) | 6/10/25 | Dkt. 195 | News Plaintiffs seek to compel OpenAI to produce documents concerning ChatGPT's current product-recommendation feature | News Plaintiffs | OpenAI | The dispute is fully briefed and the Court heard argument at the June 25, 2025 conference. <br><br> The Court ordered the parties to meet and confer and provide an update in the August 4 chart. NYT Dkt. 711 at 3. | **News Plaintiffs' Position:** The parties are continuing to meet and confer about this dispute. <br><br> News Plaintiffs seek an order requiring OpenAI to search for and produce documents relating to ChatGPT's current product-recommendation service. These documents are highly relevant to the allegation that ChatGPT harms News Plaintiffs' own product-recommendation websites (*e.g.*, The Times's Wirecutter site) by illegally reproducing News Plaintiffs' product recommendations, thereby depriving News Plaintiffs of the revenue they receive when users purchase products by clicking the affiliate links on News Plaintiffs' sites. OpenAI frames this dispute as one about a "new product," and argues the request is foreclosed by a prior Court order and Judge Stein's instructions to the *class action* plaintiffs. *See* Ex. Dkt. 146-1 at 3 (citing Times Dkt. 365). In any event, News Plaintiffs are not asking about a new product. This product-recommendation service is simply a feature within ChatGPT, which is a product that has always been subject to discovery in these cases. While OpenAI announced improvements to this feature in April 2025, those announcements confirm that this feature remains "part of" ChatGPT. Dkt. 146-2. Contrary to OpenAI's statement, News Plaintiffs have not conceded anything about whether or not ChatGPT accesses, reproduces and/or references News Plaintiffs' product-recommendation publications, and it is improper for OpenAI to rely on unsupported factual assertions about these issues while withholding the underlying discovery. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | The Court at the June 25 hearing directed the parties to continue to meet and confer and provide an update in the August chart. News Plaintiffs re-reviewed OpenAI's productions to date on this feature and flagged for OpenAI that its productions are missing documents specifically addressing OpenAI's efforts to monetize product recommendations. For example, according to public reports, OpenAI will be charging commissions on purchases made for products displayed to users within ChatGPT. *See* https://www.msn.com/en-us/news/technology/openai-reportedly-works-to-monetize-chatgpts-shopping-function-by-taking-commission/ar-AA1INCJU. News Plaintiffs do not have documents from OpenAI addressing this plan nor any other efforts by OpenAI to monetize product recommendations. The parties met and conferred about this on July 28. News Plaintiffs explained over email before and on the meet and confer call that the product recommendations feature is relevant to fair use factor four because they are competing substitutes built from OpenAI's infringing models and products at issue in this case. To the extent that the shopping feature links products and direct users to products directly from ChatGPT, for example, that would be relevant as a substitute for Wirecutter's affiliate links function. And to the extent that OpenAI plans to dispute that the product recommendation feature is substitutive at trial, The Times is entitled to discovery into it.  The parties agreed to schedule another meet and confer to discuss a potential compromise proposal, including to discuss issues OpenAI raised on the last call regarding the scope of The |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Times's request and how searches might be applied to OpenAI's existing collection of documents.<br><br>**OpenAI's Position:** News Plaintiffs' continued efforts to demand discovery into every rumored development at OpenAI threaten to derail discovery and the case schedule. At the June 25, 2025 hearing, the Court instructed the parties to review the discovery that OpenAI has produced "on product recommendation features ***before th[e] April 2025 announcement***." 6/25 Hr'g Tr. at 125:02-04 (emphasis added). OpenAI conducted that review, and located over 200 documents regarding product-recommendation in that timeframe. Rather than meet and confer regarding those documents pursuant to the Court's instruction, News Plaintiffs instead demanded discovery on ***yet another*** new "public report" of developments at OpenAI. This time, News Plaintiffs seek discovery into OpenAI's rumored plans to monetize product recommendation services at some point in the future. News Plaintiffs complain that they are missing discovery regarding this "report." But the referenced report was published only two weeks ago – three weeks after the last discovery conference and almost three months after the April 2025 end date in the Court's instruction – and discusses a contemplated monetization plan that is based wholly on a speculative, recent third-party report that at most says something is being considered, not actually in place. Necessarily, then, OpenAI has not produced documents regarding that monetization.<br><br>Tellingly, when OpenAI asked News Plaintiffs what it could produce to fully resolve the dispute, |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | News Plaintiffs refused to provide any response. Apparently, News Plaintiffs would prefer to leave this dispute live so that they can continue to sweep any future OpenAI developments into its compass, threatening to "extend discovery . . . [in] a never-ending process," just as Judge Stein feared. 5/22/2025 Hr'g Tr. at 25:24-25. As OpenAI made clear during the meet and confer, OpenAI cut-off its document collection in July 2024—which is two months after The Times's own cutoff. News Plaintiffs' most recent request would thus pose a significant burden on OpenAI – it will have to go back to OpenAI's employees to search for and collect discovery that may be relevant to a speculative third party report. If that is News Plaintiffs' demand, and as OpenAI has informed News Plaintiffs, then the parties will need to have a larger conversation involving the other plaintiffs in this case regarding all parties' document collection cutoff dates, and how this will impact the Court's schedule. The Times has not provided any position on that cutoff date, and instead prematurely brings this issue to the Court in what appears to be an attempt to frustrate the ongoing meet and confer discussions that remain ongoing.<br><br>OpenAI remains willing to meet and confer, but the Times has yet to specify the discovery they believe necessary to resolve this dispute. |
| Dkts. 155, 152 (Redacted) | 6/10/20 25 | Dkts. 185, 201-13 | OpenAI's Production of Training Datasets | News Plaintiffs | OpenAI | The Court heard argument on this dispute at the June 25, 2025 Discovery Conference | **Joint Statement:** The Parties agree that no further action is required from the Court at this time. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Positions |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | and order the parties to continue to meet and confer. |  |